# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-60020 CR-MARRA

MAGISTRATE JUDGE SELTZER

18 U.S.C. § 1349
18 U.S.C. § 1341
18 U.S.C. § 3147
18 U.S.C. § 2

UNITED STATES OF AMERICA

vs.

ALBERTO FERREIRAS and
LESLIE RATTET,

Defendants.

07 CRIM. 289

## INDICTMENT

The Grand Jury charges that:

### GENERAL ALLEGATIONS

At various times relevant to this Indictment:

1. Cash Link Systems Inc. ("Cash Link") was a Florida corporation incorporated in or around July 2003. Cash Link's principal place of business originally was located in Miami-Dade County at 10800 Biscayne Boulevard, Suite 600, Miami, Florida. In or about March 2004, Cash Link moved to 4651 Sheridan Street, Suite 410, Hollywood, Florida, in Broward County, Florida.

2. Cash Link engaged in the sale of "cash-less" automated teller machine ("ATM") business opportunities. For a minimum purchase price of approximately $12,000, potential purchasers were told they would receive several cash-less ATMs, placement of the cash-less ATMs

in high-traffic locations, and other business assistance. Potential purchasers were told that after being placed in the locations Cash Link provided, the cash-less ATMs would be used by members of the public, who would swipe their debit cards and receive a receipt. The receipt, in turn, would be taken to the location's cash register for cash or store credit. According to the defendants and their co-conspirators, a business opportunity purchaser, known as a "distributor," would earn substantial profits from the ATM fees generated when members of the public used the distributor's cash-less ATMs.

### Defendants

3. In or around June 2003, **ALBERTO FERREIRAS** pled guilty to federal offenses pending against him in the United States District Court for the Eastern District of New York, Criminal Case No. 02-00881. The charges related to **ALBERTO FERREIRAS's** sale of investments to the public. By order of the district court in the Eastern District of New York, **ALBERTO FERREIRAS** was permitted to remain on release status, that is, out of prison, prior to his sentencing hearing. This release status continued from in or around June 2003 to at least as late as in or around April 2004, during which time **ALBERTO FERREIRAS** was involved in Cash Link as set forth in the counts of this Indictment. **ALBERTO FERREIRAS** also had been sued by the United States Securities and Exchange Commission on or about August 6, 2002, in a complaint alleging sale of two fraudulent investment offerings.

4. **LESLIE RATTET** was a Cash Link salesman known to the defendants and their co-conspirators as a "closer." In or about December 2003, **LESLIE RATTET** was arrested on a complaint charging him with federal offenses in the United States District Court for the Southern District of New York, Case No. 03-MAG-2188. At that time, a magistrate judge in the Southern

2

District of New York permitted **LESLIE RATTET** to remain on release status pending further judicial proceedings. **LESLIE RATTET**'s release status continued from in or around December 2003 through at least as late as April 2004, during the period of **LESLIE RATTET**'s involvement in Cash Link as set forth in the counts of this Indictment.

## COUNT 1
### Conspiracy to Commit Mail Fraud
### (18 U.S.C. §§ 1349 and 3147)

1. Paragraphs 1 through 4 of the General Allegations section of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2. From in or around September 2003 through at least as late as in or around April 2004, in Broward and Miami-Dade Counties, in the Southern District of Florida, and elsewhere, the defendants,

**ALBERTO FERREIRAS and
LESLIE RATTET,**

did willfully, that is, with the intent to further the object of the conspiracy, and knowingly combine, conspire, confederate and agree with each other and with others, known and unknown to the Grand Jury, to commit certain offenses against the United States, that is to knowingly and with intent to defraud devise, and intend to devise, a scheme and artifice to defraud and to obtain money and property from others by means of materially false and fraudulent pretenses, representations, and promises, knowing that they were false and fraudulent when made, and knowingly cause to be delivered certain matter by a private and commercial interstate carrier, according to the directions thereon, for the purpose of executing the scheme, in violation of Title 18, United States Code, Section 1341.

## PURPOSE OF THE CONSPIRACY

3. It was the purpose of the conspiracy for the defendants and their co-conspirators to unlawfully enrich themselves by obtaining money from potential business opportunity purchasers by making materially false representations, and omitting to state and concealing material facts concerning, among other things, expected profits, the services provided to distributors, the identity and background of individuals operating Cash Link, and the authenticity of Cash Link references.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendants and their co-conspirators sought to accomplish the object and purpose of the conspiracy included, among others, the following:

4. **ALBERTO FERREIRAS** and his co-conspirators, directly and indirectly, incorporated Cash Link in July 2003.

5. **ALBERTO FERREIRAS** and his co-conspirators, directly and indirectly, placed commercials on television touting the profitability of Cash Link's cash-less ATM program, and urging interested persons to telephone a number that appeared in the advertisements.

6. Potential purchasers who responded to Cash Link's advertisements were placed in touch with salespeople known as "fronters," who explained the opportunity. The fronters explained that, for an investment of roughly $12,000, a purchaser (known as a "distributor") received cash-less ATM machines, the machines would be placed in locations in the purchaser's geographical area and, according to the sales pitch, the machines would be used by the public for a fee. According to the sales pitch, the distributor would then supposedly collect commissions based upon cash-less ATM use.

4

7. After the fronter made his or her sales pitch, "qualified" potential purchasers were transferred to another Cash Link salesperson known as a "closer." **LESLIE RATTET** was one such closer. The closer generally identified himself to potential purchasers as a "Territory Director" who was responsible for setting up distributors in the potential purchasers' geographic area.

8. The defendants and their co-conspirators sent potential purchasers via FedEx professional-looking, glossy brochures and a promotional infomercial on DVD or videotape touting the huge earnings that could supposedly be made from the Cash Link business opportunity. **ALBERTO FERREIRAS** and his co-conspirators designed the brochure.

9. The Cash Link brochure falsely represented that Cash Link was composed of experienced business professionals who brought together experience in operations, strategic planning and business development. A cover letter sent to potential purchasers asserted that Cash Link's cash-less ATM program was "proven and very profitable." It further stated that "[i]f you are chosen as a Distributor your dream of working for yourself and substantially increasing your income will become a reality." It summarized: "In the first paragraph I refer to you as a business partner. This is exactly what our Distributor's (sic) are; for our success is directly tied to yours! This is why we are so selective in choosing our Distributors."

10. The brochure also contained, among other things, a picture of a cash-less ATM supposedly in a McDonald's® store location. Despite the fact that a Cash Link cash-less ATM was never located in a McDonald's®, Taco Bell®, Burger King®, or Bagel Junction®, the brochure stated the following:

5

- "McDonald's® reported that customers using our machine spent up to 50 percent more than if they came in and paid with cash on hand."
- "Taco Bell® reported up to 30 percent increase in average ticket size when customers use our machine. They also said ATM scrip gives them a competitive advantage."
- "Burger King® told us hundreds of customers use our ATM Scrip machine each month, increasing revenue and enabling them to stop accepting personal checks."
- "The Bagel Junction® said in one month they recorded $2,500 in ATM Scrip transactions - sales they might have passed up before. They tell us their lines move faster as well, thanks to our machines."

11. The brochure contained a "Registration Document," which falsely identified A.L. as Cash Link's sole director and 100% owner.

12. The defendants and their co-conspirators, directly and indirectly, provided potential purchasers with the names of references who falsely claimed both to have had success operating Cash Link cash-less ATMs and to have benefitted from the support and assistance that Cash Link provided.

13. **ALBERTO FERREIRAS** and his co-conspirators, directly and indirectly, hired a firm to post a Cash Link website on the Internet. The website described Cash Link as a marketer and distributor of cash-less ATM machines, and falsely stated that "Cash Link Systems is composed of experienced business executives who bring together relevant business operating experience, strategic

6

planning capability, key business development and vision." The website also provided a telephone number for interested persons to call.

14. After the potential purchaser received the brochure by FedEx and spoke with the phony references, the Cash Link closer made an extended sales pitch to the potential purchaser. During this sales pitch, closers, including **LESLIE RATTET**, made a number of false representations about the Cash Link business opportunity, earnings projections, earnings of prior purchasers, and the help and support Cash Link provided. The closer then finalized the purchasers' initial investment. Purchasers sent their payments to Cash Link by FedEx and other means.

15. Upon receiving payment, the defendants and their co-conspirators, directly and indirectly, sent letters to Cash Link purchasers by FedEx and other means congratulating them on joining the rank of "successful" Cash Link distributors. The letter further stated: "With many business owners across America now seeking our cashless script ATM, we have an unlimited number of locations that will be suitable for your machines and provide a consistent cash flow each and every month." These letters lulled purchasers into a false sense of security.

16. To fraudulently induce others to purchase business opportunities, **ALBERTO FERREIRAS, LESLIE RATTET**, and their co-conspirators made, and caused others to make, numerous materially false statements, and the defendants and their co-conspirators concealed and omitted to state, and caused others to conceal and omit to state, material facts, including, among others, the following:

### Materially False Statements

a. That, after distributors made their investments, Cash Link would perform the most difficult and time consuming part of the business – securing viable locations in which to place the cash-less ATMs, when, in truth and in fact, finding viable locations was largely the distributor's responsibility because of Cash Link's inability and unwillingness to do so;

b. That Cash Link would secure high-traffic, highly profitable locations for distributors to place their cash-less ATMs in the distributor's respective local areas, when, in truth and in fact, Cash Link had a difficult time finding locations that accepted Cash Link machines, locations typically were not high-traffic or highly profitable, and locators would place the machines in any location that would accept them;

c. That Cash Link would secure placement of distributors' cash-less ATMs in such locations as McDonald's®, Burger King®, Taco Bell® and Bagel Junction®, when, in truth and in fact, no Cash Link machine had ever been in use in a McDonald's®, Burger King®, Taco Bell® or Bagel Junction® location;

d. That Cash Link had already found locations for placement of distributors' cash-less ATMs that would be available to a distributor as soon as he or she paid the initial investment when, in truth and in fact, Cash Link did not have locations for the purchaser's cash-less ATMs at the time he or she invested;

e. That, if a distributor desired, Cash Link would relocate the machine for free when, in truth and fact, Cash Link locators seldom, if ever, relocated underperforming cash-less ATMs;

f. That a distributor should expect to earn back the cost of his or her investment in the Cash Link business opportunity in 12 months or less when, in truth and in fact, not a single

8

distributor had earned back his or her investment in 12 months or less, nor was any authentic distributor on track to do so;

g.  That certain references whom Cash Link sales representatives encouraged potential purchasers to call were Cash Link distributors who purchased and operated cash-less ATMs and whose terminals were profitable when, in truth and in fact, those references had not purchased or operated cash-less ATMs, did not own profitable cash-less ATM machines, and were paid to mislead potential purchasers;

h.  That Cash Link would only sell distributorships to a limited number of people in a geographic area and Cash Link was selective in choosing distributors when, in truth and in fact, the only limitation to the willingness of defendants and their co-conspirators to accept a person as a distributor was whether he or she had enough money to pay the purchase price;

i.  That Cash Link was only successful if its distributors were successful when, in truth and in fact, Cash Link made the vast majority of its profits through the sale of business opportunities, not through cash-less ATM transactions;

j.  That the Cash Link business opportunity was highly profitable for distributors when, in truth and in fact, the defendants and their co-conspirators were the only individuals who profited from Cash Link;

k.  That Cash Link's president was the firm's director and 100% owner, when, in truth and in fact, the president was a straw man with no managerial control over Cash Link's direction and there were several hidden owners of Cash Link;

l.  That Cash Link was composed of experienced business professionals who brought together experience in operations, strategic planning and business development, when, in truth and

9

in fact, Cash Link was composed of telemarketers and boiler room managers, whose business experience consisted of selling various sorts of failed business opportunities;

### Omission and Concealment of Material Facts

m. That one of Cash Link's true owners and directors, **ALBERTO FERREIRAS**, was sued by the Securities and Exchange Commission in August 2002, charging him with controlling two firms that fraudulently sold investments to the public;

n. That one of Cash Link's true owners and directors, **ALBERTO FERREIRAS**, pled guilty on or about June 18, 2003, to federal criminal charges involving the sale of investments to the public; and

o. That two of Cash Link's owners violated a court order through their participation in Cash Link.

All in violation of Title 18, United States Code, Sections 1349 and 3147.

### COUNTS 2 - 9
### Mail Fraud
### (18 U.S.C. §§ 1341, 3147, and 2)

1. Paragraphs 1 through 4 of the General Allegations section of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2. From in or around September 2003 through at least as late as April 2004, in Broward County and Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**ALBERTO FERREIRAS and
LESLIE RATTET,**

did knowingly and with intent to defraud devise, and intend to devise, a scheme and artifice to defraud and to obtain money and property from others by means of materially false and fraudulent

10

pretenses, representations, and promises, knowing that they were false and fraudulent when made, and for the purpose of executing such scheme and artifice to defraud, and attempting to do so, did knowingly cause to be delivered certain mail matter by a private and commercial interstate carrier, according to the directions thereon.

### PURPOSE OF THE SCHEME AND ARTIFICE

3. It was the purpose of the scheme and artifice for the defendants and their co-conspirators to unlawfully enrich themselves by obtaining money from potential business opportunity purchasers by making materially false representations, and omitting to state and concealing material facts concerning, among other things, expected profits, the services provided to distributors, the identity and background of individuals operating Cash Link, and the authenticity of Cash Link references.

### MANNER AND MEANS OF THE SCHEME AND ARTIFICE

4. Paragraphs 4 through 16 of the Manner and Means section of Count 1 of this Indictment are realleged and incorporated by reference as though fully set forth herein as a description of the manner and means of the scheme and artifice.

## USE OF THE MAILS

5. On or about the dates listed as to each count below, the defendants identified as to each count, for the purpose of executing and in furtherance of the aforesaid scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and attempting to do so, did knowingly cause to be delivered by a private and commercial interstate carrier as specified in each count below, according to the directions thereon, the items identified below as to each count:

| COUNT | DEFENDANT(S) | APPROX. DATE | DESCRIPTION OF MAILING |
|---|---|---|---|
| 2 | ALBERTO FERREIRAS | December 2003 | Payment for Purchaser D.G.'s business opportunity sent by FedEx from California to Cash Link in the Southern District of Florida |
| 3 | ALBERTO FERREIRAS | January 2004 | Payment for Purchaser M.G.'s business opportunity sent by FedEx from California to Cash Link in the Southern District of Florida |
| 4 | ALBERTO FERREIRAS | February 2004 | Payment for Purchaser M.R.'s business opportunity sent by FedEx from Pennsylvania to Cash Link in the Southern District of Florida |
| 5 | ALBERTO FERREIRAS | March 2004 | Payment for Purchaser J.C.'s business opportunity sent by FedEx from Colorado to Cash Link in the Southern District of Florida |

| COUNT | DEFENDANT(S) | APPROX. DATE | DESCRIPTION OF MAILING |
|---|---|---|---|
| 6 | ALBERTO FERREIRAS and LESLIE RATTET | March 2004 | Payment for Purchaser S.O.'s business opportunity sent by FedEx from North Carolina to Cash Link in the Southern District of Florida |
| 7 | ALBERTO FERREIRAS | April 2004 | Payment for Purchaser J.M.'s business opportunity sent by FedEx from Louisiana to Cash Link in the Southern District of Florida |
| 8 | ALBERTO FERREIRAS and LESLIE RATTET | April 2004 | Payment for Purchaser R.P.'s and G.P.'s business opportunity sent by FedEx from Georgia to Cash Link in the Southern District of Florida |
| 9 | ALBERTO FERREIRAS and LESLIE RATTET | April 2004 | Payment for Purchaser G.C.'s business opportunity sent by FedEx from Orlando, Florida, to Cash Link in the Southern District of Florida |

All in violation of Title 18, United States Code, Sections 1341, 3147, and 2.

A TRUE BILL

_____
FOREPERSON

_____
R. ALEXANDER ACOSTA
UNITED STATES ATTORNEY

_____
RICHARD N. GOLDBERG
TRIAL ATTORNEY
U.S. DEPARTMENT OF JUSTICE

13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

vs.

ALBERTO FERREIRAS and
LESLIE RATTET,

Defendants.

CASE NO. _____

**CERTIFICATE OF TRIAL ATTORNEY***

Superseding Case Information:

**Court Division:** (Select One)

_ _ Miami     _ _ Key West
_X_ FTL       _ _ WPB      _ _ FTP

New Defendant(s)             Yes _____   No _____
Number of New Defendants
Total number of counts

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter:   (Yes or No)   _No_
   List language and/or dialect

4. This case will take _21_ days for the parties to try.

5. Please check appropriate category and type of offense listed below:
   (Check only one)                                 (Check only one)

   I    0 to 5 days      _____         Petty      _____
   II   6 to 10 days     _____         Minor      _____
   III  11 to 20 days    _____         Misdem.    _____
   IV   21 to 60 days    _X_           Felony     _X_
   V    61 days and over _____

6. Has this case been previously filed in this District Court? (Yes or No)   _No_
   If yes:
   Judge: _____   Case No. _____
   (Attach copy of dispositive order)
   Has a complaint been filed in this matter?   (Yes or No)   _No_
   If yes:
   Magistrate Case No.
   Related Miscellaneous numbers:    06-60137-CR-COHN
   Defendant(s) in federal custody as of  _____
   Defendant(s) in state custody as of    _____
   Rule 20 from the  _____  District of _____

   Is this a potential death penalty case? (Yes or No)   _No_

7. Does this case originate from a matter pending in the U.S. Attorney's Office prior to April 1, 2003?  _____ Yes  _X_ No

8. Does this case originate from a matter pending in the U. S. Attorney's Office prior to April 1, 1999?  _____ Yes  _X_ No
   If yes, was it pending in the Central Region?  _____ Yes  _____ No

9. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003?  _____ Yes  _X_ No

10. Does this case originate from a matter pending in the Narcotics Section (Miami) prior to May 18, 2003?  _____ Yes  _X_ No

_____
For   Richard Goldberg
      DOJ Trial Attorney
      Court No. A5500676

*Penalty Sheet(s) attached

REV.1/14/04

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

Defendant's Name: __Alberto Ferreiras__   Case No: _____

Count #: 1   -   18 U.S.C. §§ 1349 and 3147

_____Conspiracy to Commit Mail Fraud_____

*Max Penalty:   30 years' imprisonment

Counts #: 2 - 9   -   18 U.S.C. §§ 1341, 3147, and 2

_____Mail Fraud_____

*Max Penalty:   30 years' imprisonment

Count #:

*Max Penalty:

Count #:

*Max Penalty:

*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

Defendant's Name: __Leslie Rattet__     Case No: _____

Count #: 1    -    18 U.S.C. §§ 1349 and 3147

_____Conspiracy to Commit Mail Fraud_____


*Max Penalty: __30 years' imprisonment__

Counts #: 6, 8, 9 -    18 U.S.C. §§ 1341, 3147, and 2

_____Mail Fraud_____


*Max Penalty: __30 years' imprisonment__

Count #:



*Max Penalty:

Count #:



*Max Penalty:

*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.

BSS

## U.S. District Court
### Southern District of Florida (Ft. Lauderdale)
### CRIMINAL DOCKET FOR CASE #: 0:07-cr-60020-KAM-2

| | |
|---|---|
| Case title: USA v. Ferreiras et al | Date Filed: 01/25/2007 |

Assigned to: Judge Kenneth A. Marra

**Defendant**

**Leslie Rattet** (2)
*1942 Prisoner #46081-004*
*TERMINATED: 03/28/2007*

represented by **Bruce L. Udolf**
Berger Singerman
Las Olas Centre II
350 E Las Olas Boulevard
Suite 1000
Fort Lauderdale, FL 33301
954-712-5113
Fax: 523-2872
Email: budolf@bergersingerman.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Temporary*

**Pending Counts**

None

**Disposition**

**Highest Offense Level (Opening)**

None

**Terminated Counts**

ATTEMPT AND CONSPIRACY TO
COMMIT MAIL FRAUD
(1)
FRAUDS AND SWINDLES
(6)
FRAUDS AND SWINDLES
(8-9)

**Disposition**

**Highest Offense Level (Terminated)**

Felony

**Complaints**

**Disposition**

None

**Plaintiff**

USA                  represented by    **Richard N. Goldberg**
United States Department of Justice
Office of Consumer Litigation
PO Box 386
Ben Franklin Station
Washington, DC 20044
202-307-2532
Fax: 514-8742
Email: richard.goldberg@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 01/25/2007 | 1 | MOTION to seal Indictment by USA as to Alberto Ferreiras, Leslie Rattet. (eg1) (Entered: 01/26/2007) |
| 01/25/2007 | 2 | ORDER granting 1 Motion to seal Indictment as to Alberto Ferreiras (1), Leslie Rattet (2). Signed by Judge Lurana S. Snow on 1/25/07. (eg1) (Entered: 01/26/2007) |
| 01/25/2007 | 3 | INDICTMENT as to Alberto Ferreiras (1) count(s) 1, 2-9, Leslie Rattet (2) count(s) 1, 6, 8-9. (eg1) (Entered: 01/26/2007) |
| 01/26/2007 | 6 | Order to Unseal Indictment as to Alberto Ferreiras, Leslie Rattet. Signed by Judge Linnea R. Johnson on 1/26/07. (eg1) (Entered: 01/26/2007) |
| 01/26/2007 | 9 | Minute Entry for proceedings held before Judge Linnea R. Johnson :Initial Appearance as to Leslie Rattet held on 1/26/2007 (Tape #LRJ-07-9-70.) (eg1) (Entered: 01/26/2007) |
| 01/26/2007 | 10 | Order on Initial Appearance as to Leslie Rattet for proceeding held on 1/26/2007. Tape #LRJ-07-9-70 Arraignment set for 1/29/2007 10:00 AM in West Palm Beach Division before Duty Magistrate. Detention Hearing set for 1/29/2007 10:00 AM in West Palm Beach Division before Magistrate Judge Linnea R. Johnson. Report Re: Counsel Hearing set for 1/29/2007 10:00 AM in West Palm Beach Division before Magistrate Judge Linnea R. Johnson. Signed by Judge Linnea R. Johnson on 1/26/07. (eg1) (Entered: 01/26/2007) |
| 01/29/2007 | 12 | Minute Entry for proceedings held before Judge Ann E. Vitunac:Report Re: Counsel Hearing as to Leslie Rattet held on 1/29/2007. Arraignment, Garcia Hearing and Detention Hearing set for 1/30/2007 at 10:00 AM in West Palm Beach Division before Magistrate Judge Ann E. Vitunac. (Tape #AEV 07-02-700) (sa) (Entered: 01/29/2007) |
| 01/30/2007 | 14 | Minute Entry for proceedings held before Judge Ann E. Vitunac:Garcia |

| | | |
|---|---|---|
| | | Hearing as to Leslie Rattet held on 1/30/2007. Detention and Arraignment to be reset. (Tape #AEV 07-5-444/07-6-1) (sa) (Entered: 01/30/2007) |
| 01/30/2007 | 15 | NOTICE OF TEMPORARY ATTORNEY APPEARANCE: Bruce L. Udolf appearing for Leslie Rattet (sa) (Entered: 01/30/2007) |
| 02/01/2007 | 16 | Report Commencing Criminal Action as to Leslie Rattet - DOB: **/**/1942 Prisoner #: 46081-004 (eg1) (Entered: 02/01/2007) |
| 02/01/2007 | 17 | Joint MOTION to Continue *Briefing Schedule* by USA as to Alberto Ferreiras, Leslie Rattet. Responses due by 2/15/2007 (Goldberg, Richard) (Entered: 02/01/2007) |
| 02/01/2007 | 18 | Joint MOTION to Continue *Due Date for Briefing* by USA as to Alberto Ferreiras, Leslie Rattet. Responses due by 2/15/2007 (Goldberg, Richard) (Entered: 02/01/2007) |
| 02/01/2007 | 21 | TRANSCRIPT of Garcia Hearing Proceedings as to Alberto Ferreiras, Leslie Rattet held on 1/30/07; pages: 1-68 before Judge Magistrate Ann E. Vitunac. Court Reporter: Jerald M. Merald. (bg) (Entered: 02/05/2007) |
| 02/08/2007 | 22 | Second MOTION to Continue *Due Date for Briefing* by USA as to Alberto Ferreiras, Leslie Rattet. Responses due by 2/23/2007 (Goldberg, Richard) (Entered: 02/08/2007) |
| 02/08/2007 | 23 | ORDER granting 22 Second Joint Motion to Continue due date for briefing issue as to Alberto Ferreiras (1), Leslie Rattet (2). Signed by Judge Ann E. Vitunac on 2/8/07. (sa) (Entered: 02/08/2007) |
| 02/14/2007 | 25 | ARREST Warrant Returned Executed on 1/26/07 in case as to Leslie Rattet (pa) (Entered: 02/15/2007) |
| 02/22/2007 | 26 | Joint MOTION to Vacate *Order for Submission of Briefs Regarding Defense Counsel's Potential Conflict of Interest* by USA as to Alberto Ferreiras, Leslie Rattet. (Goldberg, Richard) (Entered: 02/22/2007) |
| 02/27/2007 | 27 | ORDER granting 26 Joint Motion to Vacate Order for submission of briefs regarding Defense Counsel's potential conflict of interest as to Alberto Ferreiras (1), Leslie Rattet (2). Signed by Judge Ann E. Vitunac on 2/26/07. (sa) (Entered: 02/27/2007) |
| 03/21/2007 | 28 | STATUS REPORT by USA as to Alberto Ferreiras, Leslie Rattet (Goldberg, Richard) (Entered: 03/21/2007) |
| 03/28/2007 | 29 | CONSENT TO TRANSFER JURISDICTION (Rule 20) to Southern District of New York Counts closed as to Leslie Rattet (2) Count 1,6,8-9. (de) (Entered: 03/30/2007) |
| 03/30/2007 | 30 | Transmittal Letter as to Leslie Rattet sent to Southern District of New York with Consent to Transfer. (de) (Entered: 03/30/2007) |

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

**Clarence Maddox**
Court Administrator • Clerk of Court

301 North Miami Avenue
Miami, Florida 33128-7788
(305) 523-5100

March 30, 2007

United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007-1312


RE: USA vs. **Leslie Rattet**
Case No. **07-60020-CR-MARRA**

Dear Sir or Madam:

The defendant in the above case has entered a Consent to Transfer of Case for Plea and Sentence (*Under Rule 20*) and is being transferred to your court. The following items are being forwarded herewith:

   (1) Certified Copy of Consent to Transfer of Case for Plea and Sentence
   (1) certified copy of the Indictment/Information
   (1) certified copy of the Docket Sheet

Please acknowledge receipt of the above on the enclosed copy of this letter and return it the envelope which has been provided.


CLARENCE MADDOX
Clerk of Court


by: *Dena R. Eaton*
Dena R. Eaton
Deputy Clerk

Encl.

cc: Court File

---

*The Mission of the Clerk's Office for the Southern District of Florida is to be the mechanism for the judges, the bar, litigants, and the public, to resolve disputes in a just and efficient manner.*